[No. B088866. Second Dist., Div. One. Oct. 5, 1995.]

HAMBRECHT & QUIST VENTURE PARTNERS et al., Plaintiffs and Appellants, v.
AMERICAN MEDICAL INTERNATIONAL, INC., Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part B.

1534

**COUNSEL**

Draper & Pherson, Douglas S. Draper, Cripe & Graham and Gary E. Cripe for Plaintiffs and Appellants.

Jones, Day, Reavis & Pogue, Dean B. Allison, David J. DiMeglio and Christine A. Samsel for Defendant and Respondent.

## OPINION

**MASTERSON, J.**—This appeal raises the question of whether a standard choice-of-law provision (which states that a contract shall be governed by the "laws" of a particular jurisdiction) incorporates the statutes of limitations of the chosen state. We hold that it does and further conclude that the choice-of-law provision in this case requires the application of a foreign statute of limitations which is shorter than the otherwise applicable California statute of limitations.

### BACKGROUND

In October 1992, plaintiffs[1] filed their original complaint in superior court against American Medical International, Inc. (AMI) and others,[2] alleging various causes of action arising out of plaintiffs' purchase of stock in a leveraged buyout of a company affiliated with AMI. Defendants removed the action to federal district court and challenged the sufficiency of the allegations. The district court's ruling resulted in the filing of a first amended complaint and a remand of the action to superior court.

The first amended complaint alleged as follows. AMI is a Delaware corporation with its principal place of business in Los Angeles County. It is a private hospital and health care company. In or about 1976, AMI formed Professional Hospital Services, Inc. (PHS Services) to develop and operate automated financial management systems for all of AMI's domestic hospitals. In 1978, AMI began selling these systems to non-AMI hospitals. AMI owned all of the stock in PHS Services through its wholly owned subsidiary, AMI Information Systems Group, Inc. (AMI Systems). AMI formed Professional Healthcare Systems Holding Corporation (PHS Holding), a Delaware corporation, so that PHS Holding could acquire PHS Services from AMI Systems. To accomplish that acquisition, PHS Services was first acquired by a wholly owned subsidiary of PHS Holding, Professional Healthcare Systems Acquisition Corporation (PHS Acquisition). The name of PHS Services was then changed to Professional Healthcare Systems, Inc. (PHS), and PHS

---

[1]Plaintiffs consist of ten entities: two corporations, a general partnership, and seven limited partnerships. The corporate plaintiffs are Hamco Capital Corporation and Wilmington Securities, Inc. The general partnership is Hambrecht & Quist Venture Partners. The limited partnerships consist of two groups. One group is composed of domestic limited partnerships: H&Q Ventures IV, Hamquist, and H&Q Investors. The other group is foreign limited partnerships: H&Q Ventures International C.V., H&Q London Ventures, H&Q Taiwan Ventures, and Independent Investment.

[2]In addition to AMI, plaintiffs sued three other corporations (Professional Healthcare Systems Holding Corporation, American Medical Holdings, Inc., and Professional Healthcare Systems, Inc.) and three individuals. AMI is the only respondent on this appeal.

Acquisition was merged into PHS. PHS is a Delaware corporation with its principal place of business in Los Angeles County.

In connection with the leveraged buyout, PHS Holding entered into a purchase agreement with AMI and AMI Systems in which the latter companies agreed to sell the business of PHS Services to PHS Acquisition for $35 million. The purchase price was to be financed in part by the sale of preferred stock in PHS Holding to certain investors, including plaintiffs. To solicit investors, AMI distributed a private placement memorandum, which, according to plaintiffs, contained material misrepresentations concerning the business, financial condition, and economic prospects of PHS Holding and PHS. In reliance on those misrepresentations, plaintiffs executed stock purchase agreements in November 1987 (the November agreements) to buy stock in PHS Holding. Plaintiffs did not discover the falsity of the misrepresentations until in or about March 1989.

The first amended complaint contained five causes of action. The first cause of action, for fraud, sought to rescind the November agreements with PHS Holding. AMI's liability on that claim was based on the allegation that PHS Holding was its alter ego. The second cause of action, also asserted against AMI on an alter ego theory, sought rescission of the November agreements due to a mistake of fact or law. The third and fourth causes of action sought to rescind the November agreements based upon an undisclosed relationship of principal and agent between AMI and other defendants. The fifth cause of action alleged a conspiracy to defraud plaintiffs in connection with their purchase of stock.

AMI demurred to the first amended complaint. The trial court overruled the demurrer as to the first four causes of action but sustained it as to the fifth cause of action (for conspiracy) without leave to amend. After filing an answer and engaging in discovery, AMI moved for summary adjudication on the first two causes of action, arguing that plaintiffs were estopped from asserting an alter ego theory since they had treated PHS Holding as a valid, separate corporate entity. The court granted the motion.

In May 1994, plaintiffs obtained leave to file a second amended complaint, which realleged the first four causes of action and added two new claims against AMI. A new fifth cause of action, for breach of contract, alleged that in August 1987, PHS Holding had entered into an "Agreement to Purchase Stock" (the August agreement) with AMI and AMI Systems. That agreement stated in part: "The Seller [AMI] and [AMI Systems] agree that the representations, warranties and covenants of the Seller and [AMI

Systems] are hereby expressly made for the benefit of existing and future stockholders (including shareholders of preferred stock) of the Buyer [PHS Holding] and such shareholders are third-party beneficiaries to this Agreement." Plaintiffs alleged that AMI breached the August agreement by misrepresenting the business, financial condition, and economic prospects of PHS Holding and PHS.

A new sixth cause of action, for declaratory relief, sought to establish plaintiffs' right to indemnification from AMI based on an indemnity provision in the August agreement. Plaintiffs alleged that the August agreement obligated AMI (1) to indemnify them for losses incurred in purchasing PHS Holding stock and (2) to satisfy any judgment they might recover against PHS Holding. The August agreement, which was attached to the second amended complaint as an exhibit, also stated: "The transactions contemplated by and the provisions of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware."

After filing the second amended complaint, plaintiffs stipulated to dismiss the third and fourth causes of action therein without prejudice, leaving only the fifth and sixth causes of action to be adjudicated. AMI demurred to those remaining claims on the ground that they were barred by Delaware's three-year statute of limitations for breach of contract, made applicable by the August agreement's choice-of-law provision.[3] The trial court agreed and sustained the demurrer without leave to amend.

Judgment was entered in AMI's favor in September 1994. Plaintiffs filed a timely appeal.

## DISCUSSION

Plaintiffs contend that the trial court erred in construing the choice-of-law provision to require the application of the Delaware statute of limitations to the fifth and sixth causes of action. In the alternative, they argue that even if the choice-of-law clause incorporated the Delaware statute of limitations, the California statute of limitations should nevertheless be applied. We disagree with these contentions and affirm the judgment.

### A. *Applicability of Delaware Statute of Limitations*

Because the trial court applied the Delaware statute of limitations at the pleading stage, sustaining AMI's demurrer without leave to amend, ". . . we

---

[3]The Delaware statute of limitations states in pertinent part: "No action . . . based on a promise . . . shall be brought after the expiration of 3 years from the accruing of the cause of such action . . . ." (Del. Code Ann. tit. 10, § 8106 (1975).)

are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matter which may be judicially noticed.' . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. . . . When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. . . . And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. . . . The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58], citations omitted.) ■ A complaint fails to state a cause of action where the dates alleged therein establish that the claim is barred by the statute of limitations. (*Anderson* v. *McNally* (1957) 150 Cal.App.2d 778, 783-784 [310 P.2d 975].)

In reviewing the trial court's ruling that the fifth and sixth causes of action are time-barred, we first consider whether the choice-of-law provision incorporates Delaware's statutes of limitations. Finding that it does, we then consider whether the provision is enforceable in this case.

### 1. *Scope of the Choice-of-law Provision*

■ The August agreement stated that it "shall be governed by and construed in accordance with the laws of the State of Delaware." We must therefore determine whether the "laws" of Delaware include that state's statutes of limitations.[4]

"The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." (Civ. Code, § 1644.) "Technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly

---

[4]Plaintiffs do not contend that there is extrinsic evidence reflecting the parties' understanding of the choice-of-law clause. Consequently, the interpretation of the clause presents a pure question of law, and we review the trial court's decision on that issue de novo. (See *Davies Machinery Co.* v. *Pine Mountain Club, Inc.* (1974) 39 Cal.App.3d 18, 23-24 [113 Cal.Rptr. 784].)

used in a different sense." (Civ. Code, § 1645.)[5] Whether we use the popular, legal, or technical meaning of "laws," we reach the same conclusion.

The term "laws" refers in general to the "rules promulgated by government as a means to an ordered society." (Black's Law Dict. (5th ed. 1979) p. 798, col. 2.) "Strictly speaking, ['laws' refers to] session laws and statutes and not decisions of court." (*Ibid.*) However, "in common usage [the term] refers to both legislative and court made law, as well as to administrative rules, regulations and ordinances." (*Ibid.*)

Given that "laws" is simply the plural of "law," we find it appropriate to consider the meaning and usage of the latter term. As our Supreme Court stated over a century ago: "There is no word in the language which in its popular and technical application takes a wider or more diversified signification than the word 'law'—its use in both regards is illimitable. . . . The term 'law,' as used in its popular sense . . . includes the whole body or system of rules of conduct, including the decisions of courts as well as legislative acts . . . ." (*Miller* v. *Dunn* (1887) 72 Cal. 462, 465-466 [14 P. 27].) Similarly, the United States Supreme Court has defined "law" as "the rules of action or conduct duly prescribed by controlling authority, and having binding legal force." (*U.S. Fidelity & G. Co.* v. *Guenther* (1930) 281 U.S. 34, 37 [74 L.Ed. 683, 686, 50 S.Ct. 165, 72 A.L.R. 1064].)

These definitions indicate that a state's "laws" include its statutes of limitations. Both the technical and popular meanings of "laws" refer to a jurisdiction's statutory law, of which the statutes of limitations are a part. But we need not rest our decision on the foregoing definitional references alone.

In resolving conflict of laws issues, California courts have recognized that the statutes of limitations are part of a state's "law." In the absence of a choice-of-law provision, Civil Code section 1646 requires that a contract "be interpreted according to the *law* and usage of the place where it is to be performed; or, if [the contract] does not indicate a place of performance, according to the *law* and usage of the place where it is made." (Civ. Code,

---

[5]Because the choice-of-law clause states that Delaware law is to govern the construction of the August agreement, questions concerning the scope of the clause would, in the normal course, be decided under Delaware law. (See *Nedlloyd Lines B. V.* v. *Superior Court* (1992) 3 Cal.4th 459, 469, fn. 7 [11 Cal.Rptr.2d 330, 834 P.2d 1148].) However, the parties have not briefed the interpretation issue under Delaware law (see Evid. Code, § 453, subd. (b)), nor have they requested that we take judicial notice of Delaware law on the matter (see Evid. Code, § 452, subd. (a)). The question therefore becomes one of California law. (*Nedlloyd Lines B. V.* v. *Superior Court, supra,* 3 Cal.4th at p. 469, fn. 7.)

§ 1646, italics added; see also 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 62-63, pp. 99-101.) As used in this statute, the "law" includes the statutes of limitations of the jurisdiction where the contract was made or to be performed. (*Henderson* v. *Superior Court* (1978) 77 Cal.App.3d 583, 592-593 [142 Cal.Rptr. 478] [finding Florida statutes of limitations applicable].)

Further, while some conflict of laws cases have distinguished between "procedural" and "substantive" law (placing the statute of limitations in the former category), they nevertheless view the statutes of limitations as being part of the "law." (See, e.g., *American Bank of Commerce* v. *Corondoni* (1985) 169 Cal.App.3d 368, 371-373 [215 Cal.Rptr. 331] [discussing former and modern treatment of statutes of limitations for conflict of laws purposes].)

Moreover, one Court of Appeal has strongly suggested that a standard choice-of-law provision (i.e., one which incorporates the "law(s)" of a specified jurisdiction) includes the chosen state's statutes of limitations. In *Ashland Chemical Co.* v. *Provence* (1982) 129 Cal.App.3d 790 [181 Cal.Rptr. 340], the parties' choice-of-law clause stated that their contract was to be "governed by and construed in accordance with the laws of the Commonwealth of Kentucky." (*Id.* at p. 793.) Plaintiffs argued that the choice-of-law provision required application of Kentucky's 15-year statute of limitations to a claim otherwise governed by California's 4-year limitations period for written obligations (Code Civ. Proc., § 337, subd. 1). The court held that application of Kentucky's significantly longer statute of limitations would violate California's interest in avoiding the prosecution of stale claims. (129 Cal.App.3d at pp. 794-795.) It accordingly applied the California statute of limitations and affirmed the dismissal of the complaint. However, the court indicated in dicta that the choice-of-law provision would have required the application of Kentucky's statute of limitations had it been shorter than California's. (*Id.* at p. 795 & fn. 2.) In so doing, the court recognized that the choice-of-law provision—more specifically, the term "laws"—incorporated Kentucky's statutes of limitations.

Finally, the Restatement Second of Conflict of Laws (the Restatement) provides the following guidance on the use of the term "law" in choice-of-law provisions: "In the absence of a contrary indication of intention, the reference is to the *local law* of the [chosen] state." (Rest.2d Conf. of Laws (1988 pocket supp.) § 187, subd. (3), p. 134, italics added.) The Restatement defines "local law" to mean the chosen state's "body of standards, principles, and rules, exclusive of its rules of Conflict of Laws, which the courts of

that state apply in the decision of controversies brought before them." (Rest.2d Conf. of Laws, § 4, subd. (1), p. 8.) A state's "standards, principles, and rules" applicable to actions brought within its borders—not including its conflict of laws principles—undoubtedly includes its statutes of limitations.[6]

In light of the broad meaning of "law" and of its interpretation by the courts and the Restatement to include the statutes of limitations, we find that the August agreement incorporated Delaware's statutes of limitations. We therefore decline plaintiffs' invitation to read the choice-of-law provision as if it incorporated only the substantive law of Delaware, i.e., excluded Delaware procedural law. Although statutes of limitations may be viewed as procedural rather than substantive in some contexts, the choice-of-law clause in this case does not make a distinction along those lines. It simply incorporates the "laws" of Delaware without using any adjectives or other qualifiers. Moreover, even if the clause could be read to exclude Delaware procedural law, it does not follow that the statutes of limitations would be excluded.[7] In any event, we will not read into the agreement's unqualified language a restriction that the parties could easily have inserted but failed to include.[8]

---

[6]It is axiomatic that in the absence of conflict of laws principles (and a choice-of-law provision), a state will apply its own statutes of limitations to disputes brought before its courts. (Rest.2d Conf. of Laws (1988 pocket supp.) § 142, p. 123.)

[7]At least with respect to statute of limitations issues, the substance-procedure terminology is problematic because those labels are difficult to apply as mutually exclusive categories. (See Rest.2d Conf. of Laws, § 122, com. b, p. 352 [discussing problems in classifying matters as either "procedural" or "substantive"].) For instance, in California, statutes of limitations are considered procedural in the malicious prosecution context; an action dismissed on limitations grounds is not a "favorable termination" that will support a subsequent malicious prosecution claim. (*Lackner* v. *LaCroix* (1979) 25 Cal.3d 747, 750-752 [159 Cal.Rptr. 693, 602 P.2d 393].) However, statutes of limitations are arguably no longer considered procedural under conflict of laws analysis or in interpreting choice-of-law provisions. (See *Ashland Chemical Co.* v. *Provence, supra,* 129 Cal.App.3d at pp. 793-794.) As the Supreme Court has stated, "Except at the extremes, the terms 'substance' and 'procedure' precisely define very little except a dichotomy" (*Sun Oil Co.* v. *Wortman* (1988) 486 U.S. 717, 726 [100 L.Ed.2d 743, 755, 108 S.Ct. 2117]), such that "[s]tatutes of limitations . . . defy characterization as either purely procedural or purely substantive" (*id.* at p. 736 [100 L.Ed.2d at p. 761] (conc. opn. of Brennan, J.)).

[8]We do not suggest that a standard choice-of-law provision incorporates all of the rules and practices of the chosen state. As noted in the Restatement: "Each state has local law rules prescribing the procedure by which controversies are brought into its courts and by which the trial of these controversies is conducted. . . . The forum has compelling reasons for applying its own rules to decide such issues . . . even if many issues in the case will be decided by reference to the local law of another state. The forum is more concerned with how its judicial machinery functions and how its court processes are administered than is any other state. Also, in matters of judicial administration, it would often be disruptive or difficult for the forum to apply the local law rules of another state." (Rest.2d Conf. of Laws, § 122, com. a, p.

We also find inapposite those cases holding that a standard choice-of-law clause does not include the chosen state's statutes of limitations. (See, e.g., *Des Brisay* v. *Goldfield Corp.* (9th Cir. 1981) 637 F.2d 680, 682 [hereafter *Des Brisay*]; *Federal Deposit Ins. Corp.* v. *Petersen* (10th Cir. 1985) 770 F.2d 141, 142-143; *Nez* v. *Forney* (1989) 109 N.M. 161, 163 [783 P.2d 471, 473].) Each of those decisions rested on the "traditional" conflict of laws principle that the forum state should apply its own statutes of limitations to all claims brought within its courts. (*Des Brisay, supra,* 637 F.2d at p. 682; *Federal Deposit Ins. Corp.* v. *Petersen, supra,* 770 F.2d at pp. 142-143 [following *Des Brisay*]; *Nez* v. *Forney, supra,* 109 N.M. at pp. 162, 163 [783 P.2d at pp. 472, 473].) Plainly, if a state's conflict of laws principles dictate that its own statutes of limitations routinely be applied, the courts of that jurisdiction will be less inclined to construe a standard choice-of-law provision as mandating that a foreign statute of limitations apply.

While California courts once followed the traditional approach to conflicts issues, the Supreme Court abandoned that analysis over 25 years ago and adopted instead the "governmental interest" approach. (*American Bank of Commerce* v. *Corondoni, supra,* 169 Cal.App.3d at pp. 371-372, discussing *Reich* v. *Purcell* (1967) 67 Cal.2d 551 [63 Cal.Rptr. 31, 432 P.2d 727].)[9] Thus, California's conflict of laws principles treat the statute of limitations in the same manner as any other issue, and the courts of this state do not automatically apply California's statutes of limitations in every case. (See 169 Cal.App.3d at pp. 371-374.) As the Ninth Circuit recently recognized, where a jurisdiction does not follow the traditional approach of applying its own statutes of limitations to all claims within its courts, a standard choice-of-law provision should be construed to incorporate the chosen state's statutes of limitations. (*Wang Laboratories, Inc.* v. *Kagan* (9th Cir. 1993) 990 F.2d 1126, 1128-1129 [distinguishing *Des Brisay* and holding that contract

---

350.) Matters of judicial administration include "the proper form of the action, service of process, pleading, rules of discovery, mode of trial and execution and costs." (*Id.* at p. 351.)

[9]Under governmental interest analysis, the court examines the respective interests of the states involved to identify the law that most appropriately applies to the issue involved. (*American Bank of Commerce* v. *Corondoni, supra,* 169 Cal.App.3d at p. 372.) In that regard, the court first determines whether the policy underlying a particular state's law will be significantly furthered by its application to the case at hand. (*Ibid.*) If both California and the foreign state have a strong interest in applying their respective laws, a true conflict exists. (*Ibid.*) The court must then engage in "comparative impairment" analysis and apply the law of the state whose policy would be more impaired if its law were not applied. (*Ibid.*) If the policy of the foreign state would not be significantly furthered by applying its law, there is a "false" conflict, and the court will apply California law. (*Ibid.*)

governed by "the law" of Massachusetts requires application of Massachusetts statutes of limitations].)[10]

Having concluded that the choice-of-law clause requires the application of Delaware's statutes of limitation, we turn to the question of whether, as so interpreted, the clause is enforceable in this case.

### 2. *Enforceability of the Choice-of-law Provision*

■ "In determining the enforceability of arm's-length contractual choice-of-law provisions, California courts shall apply the principles set forth in Restatement section 187, which reflects a strong policy favoring enforcement of such provisions." (*Nedlloyd Lines B. V.* v. *Superior Court*, *supra*, 3 Cal.4th 459, 464-465, fn. omitted [hereafter *Nedlloyd*].)[11]

Specifically, Restatement section 187, subdivision (2) provides: "The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either [¶] (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or [¶] (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."[12]

---

[10]Plaintiffs point out that the August agreement included a provision stating that "[a]ll representations, warranties and covenants by the parties herein shall survive the Closing and shall cease to be of force and effect five years from the date of Closing." Based on this provision, plaintiffs contend that when the parties wished to deal with "timing" issues, they expressly did so. Thus, the argument goes, the absence of a "time to sue" clause or an explicit reference to Delaware's statutes of limitations means that the parties intended the forum's (California's) statutes of limitations to apply. We disagree. By using the term "laws" in the choice-of-law provision, the parties incorporated Delaware's statutes of limitations without the need for any additional contract language. Further, a provision specifying the life of a warranty has no bearing on the time period for filing suit after the warranty has been breached.

[11]The parties do not dispute that the choice-of-law provision was the result of an arm's-length transaction. Nor do they contend that the August agreement is governed by the Uniform Commercial Code, which has its own codified rules for determining the validity of choice-of-law clauses. (See *Nedlloyd, supra*, 3 Cal.4th at p. 465, fn. 2 [discussing choice-of-law principles under Restatement and Uniform Commercial Code].) Thus, as in *Nedlloyd*, we apply the Restatement approach. (See *ibid.*)

[12]Subdivision (1) of Restatement section 187 states: "The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed

As the court in *Nedlloyd* summarized: "Briefly restated, the proper approach under Restatement section 187, subdivision (2) is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California.[13] If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue . . . .' (Rest., § 187, subd. (2).) If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy." (*Nedlloyd, supra,* 3 Cal.4th at p. 466, italics in original, fns. omitted.)

### a. *Substantial relationship or reasonable basis*

■ As to the initial inquiry, the parties to a contract have a substantial relationship with the chosen state if one or more of them is incorporated

to that issue." As comment c to section 187, subdivision (1) explains: "The rule of this Subsection is a rule providing for incorporation by reference and is not a rule of choice of law. The parties, generally speaking, have power to determine the terms of their contractual engagements. They may spell out these terms in the contract. In the alternative, they may incorporate into the contract by reference extrinsic material which may, among other things, be the provisions of some foreign law. . . . [M]ost rules of contract law are designed to fill gaps in a contract which the parties could themselves have filled with express provisions." (Rest.2d Conf. of Laws (1988 pocket supp.) § 187, subd. (1), com. c, p. 136.) The parties do not contend that they incorporated by reference extrinsic material in the form of Delaware law in order to fill a gap in their contract. Thus, as in *Nedlloyd,* subdivision (1) is not at issue, and we need not further consider it. (See 3 Cal.4th at p. 465, fn. 3.)

[13]Actually, Restatement section 187, subdivision (2) refers not to the fundamental policies of the forum state—here, California—but to the state "which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." Under Restatement section 188, a court considers a variety of factors (e.g., place of contracting, place of performance) in determining the state with the greater interest in having its law applied to an issue, and the analysis is similar to California's governmental interest approach. (See Rest.2d Conf. of Laws, § 188, subd. (2) [listing factors]; *Stonewall Surplus Lines Ins. Co.* v. *Johnson Controls, Inc.* (1993) 14 Cal.App.4th 637, 645-646 [17 Cal.Rptr.2d 713] [discussing Restatement factors and governmental interest approach]; fn. 9, *ante* [discussing governmental interest approach].) In this case, the parties focus on whether the application of Delaware's statutes of limitations would be contrary to a fundamental policy of California. Thus, we need not examine the policies of a foreign state in deciding whether to enforce the choice-of-law provision. (See *Nedlloyd, supra,* 3 Cal.4th at p. 466, fn. 5.)

there. (*Nedlloyd, supra,* 3 Cal.4th at p. 467.) "A party's incorporation in a state is a contact sufficient to allow the parties to choose that state's law to govern their contract." (*Ibid.,* quoting *Hale* v. *Co-Mar Offshore Corp.* (W.D.La. 1984) 588 F.Supp. 1212, 1215.) It does not matter that, although incorporated in the chosen state, a party may have its principal place of business in the forum state; that party's "domicile" in the chosen state provides a sufficient relationship to support the choice-of-law provision. (3 Cal.4th at pp. 462, 467 [substantial relationship found where plaintiff was incorporated in chosen state but had principal place of business in forum state].)

In this case, AMI and PHS Holding, two of the three parties to the August agreement, are incorporated in Delaware. That contact is sufficient to establish a substantial relationship between the contracting parties and Delaware. It is not necessary that *each* of the parties to the contract have an enduring or permanent connection to the chosen state. (*Nedlloyd, supra,* 3 Cal.4th at pp. 462, 467 [substantial relationship found where only two of at least nine contracting parties were incorporated in or resided in chosen state].) If one of the contracting parties is incorporated in the chosen state, then *all* of the contracting parties have a substantial relationship to that state for choice-of-law purposes. (*Id.* at p. 467.)[14] Thus, it is of no consequence that most of the plaintiffs in this case are residents or domiciliaries of California or some state other than Delaware.

Further, the requisite substantial relationship exists here despite plaintiffs' allegation, which we accept as true, that AMI and PHS Holding have their principal places of business in California. That allegation might be of importance if we were applying a governmental interest analysis to decide which state has the greater interest in having its statutes of limitations applied. But we do not use the governmental interest approach in assessing the validity of a choice-of-law provision. Rather, we ask the simpler (and preliminary) question of whether the chosen state has a substantial relationship to the parties or transaction. Such a relationship is present here.

Moreover, in addition to satisfying the "substantial relationship" test, a party's place of incorporation also meets the alternative "reasonable basis" test. (*Nedlloyd, supra,* 3 Cal.4th at p. 467.) Because AMI and PHS Holding were incorporated in Delaware, the parties to the August agreement had a reasonable basis for choosing to apply Delaware law even

---

[14]*Nedlloyd* makes clear that a choice-of-law provision can apply to a defendant who is not a resident of the chosen state. (3 Cal.4th at pp. 462, 467.) Accordingly, the dicta in *Ashland Chemical Co.* v. *Provence, supra,* 129 Cal.App.3d at page 795, footnote 2, suggesting that the chosen state's statutes of limitations apply only to a resident of that state, is not to be followed.

assuming that no substantial relationship existed. (*Id.* at pp. 467-477.) In finding a reasonable basis for the parties' choice of law in *Nedlloyd*, the court noted: " 'If one of the parties resides in the chosen state, the parties have a reasonable basis for their choice'. . . . A state of incorporation is certainly at least one government entity with a keen and intimate interest in internal corporate affairs, including the purchase and sale of its shares, as well as corporate management and operations." (3 Cal.4th at pp. 467-468.) The same reasoning applies here.

In sum, the choice-of-law provision satisfies the initial test: the chosen state has a substantial relationship to the parties, and, alternatively, there is a reasonable basis supporting the parties' choice of law.

b. *Existence of fundamental state policy*

In general, California courts have permitted contracting parties to modify the length of the otherwise applicable California statute of limitations, whether the contract has extended or shortened the limitations period. (See 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, §§ 333-334, pp. 363-366.)

As to extending the limitations period, an early Supreme Court case upheld an agreement to permanently waive the statute of limitations as a defense. (*Dexter* v. *Pierson* (1931) 214 Cal. 247, 250-251 [4 P.2d 932].) However, in 1951, the Legislature enacted section 360.5 of the Code of Civil Procedure.[15] That statute permits waivers of the statute of limitations defense provided they are in writing and do not extend the limitations period for more than four years at a time; it allows for any number of successive, separately executed agreements for additional four-year periods. In contrast, the Legislature has provided in the California Uniform Commercial Code that the four-year limitations period for breach of a sales contract cannot be extended by agreement of the parties. (Cal. U. Com. Code, § 2725, subd.

---

[15]Section 360.5 states: "No waiver shall bar a defense to any action that the action was not commenced within the time limited by this title unless the waiver is in writing and signed by the person obligated. No waiver executed prior to the expiration of the time limited for the commencement of the action by this title shall be effective for a period exceeding four years from the date of expiration of the time limited for commencement of the action by this title and no waiver executed after the expiration of such time shall be effective for a period exceeding four years from the date thereof, but any such waiver may be renewed for a further period of not exceeding four years from the expiration of the immediately preceding waiver. Such waivers may be made successively. The provisions of this section shall not be applicable to any acknowledgment, promise or any form of waiver which is in writing and signed by the person obligated and given to any county to secure repayment of indigent aid or the repayment of moneys fraudulently or illegally obtained from the county."

(1).) Nonetheless, once sued, if a defendant does not timely raise a limitations defense, it is waived regardless of how long the plaintiff has delayed. (See *Minton* v. *Cavaney* (1961) 56 Cal.2d 576, 581 [15 Cal.Rptr. 641, 364 P.2d 473].)

As for shortening the limitations period, the courts will enforce the parties' agreement provided it is reasonable. (*Capehart* v. *Heady* (1962) 206 Cal.App.2d 386, 388-389 [23 Cal.Rptr. 851, 6 A.L.R.3d 1190]; *C & H Foods Co.* v. *Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1064 [211 Cal.Rptr. 765].) For instance, the parties can shorten California's four-year statute of limitations for breach of a written contract (Code Civ. Proc., § 337, subd. 1) to three months (*Ward* v. *System Auto etc. Garages* (1957) 149 Cal.App.2d Supp. 879 [309 P.2d 577]), six months (*Tebbets* v. *Fidelity and Casualty Co.* (1909) 155 Cal. 137, 139 [99 P. 501]), or a year (*Capehart* v. *Heady, supra,* 206 Cal.App.2d at p. 388). As provided by statute, parties to a sales contract governed by the California Uniform Commercial Code can shorten the four-year statute of limitations for breach of contract to not less than a year. (Cal. U. Com. Code, § 2725, subd. (1).)

Thus, except as restricted by statute, California courts accord contracting parties substantial freedom to modify the length of the statute of limitations. As the Supreme Court has stated in permitting parties to shorten the limitations period: "[S]uch statutes [of limitations] are regarded as statutes of repose, carrying with them, not a right protected under the rule of public policy, but a mere personal right for the benefit of the individual, which may be waived. . . . We are unable to perceive that any distinction can be made upon the ground of public policy between the right of a party to waive the plea of the statute of limitations as a defense to an action, and his right to waive a portion of the time granted by the statute for the commencement of an action." (*Tebbets* v. *Fidelity and Casualty Co., supra,* 155 Cal. at p. 139, citations omitted.)[16]

 Further, we can discern no fundamental state policy against applying a foreign jurisdiction's statutes of limitations to claims brought within

---

[16]Although *Tebbets*'s waiver analysis has withstood the test of time, subsequent Supreme Court cases have commented that the statutes of limitations do serve public policies. (See *Pashley* v. *Pacific Elec. Ry. Co.* (1944) 25 Cal.2d 226, 228-229 [153 P.2d 325] [statutes of limitations further peace and welfare of society by preventing unexpected enforcement of stale claims]; *Scheas* v. *Robertson* (1951) 38 Cal.2d 119, 125 [238 P.2d 982] [same].) Of course, the statute of limitations remains a matter of "personal right for the benefit of the individual" (*Tebbets* v. *Fidelity and Casualty Co., supra,* 155 Cal. at p. 139) in the sense that a defendant waives that defense by not timely raising it (*Minton* v. *Cavaney, supra,* 56 Cal.2d at p. 581).

California courts. Significantly, in the absence of a choice-of-law provision, California's conflict of laws principles recognize that it may be appropriate to apply a foreign state's statute of limitations rather than California's. (See *Henderson* v. *Superior Court, supra*, 77 Cal.App.3d at pp. 592-593 [applying Florida statutes of limitations]; *American Bank of Commerce* v. *Corondoni, supra*, 169 Cal.App.3d 368 [choosing between California and New Mexico statutes of limitations]; *Ledesma* v. *Jack Stewart Produce, Inc.* (9th Cir. 1987) 816 F.2d 482 [under California conflict of laws principles, Arizona statute of limitations applies].) Moreover, one Court of Appeal has stated in dicta that a choice-of-law provision is enforceable where, as here, the chosen state's statute of limitations is shorter than California's. (*Ashland Chemical Co.* v. *Provence, supra*, 129 Cal.App.3d at p. 795, fn. 2.)[17]

In this case, the choice-of-law provision results in the application of Delaware's three-year statute of limitations (Del. Code Ann. tit. 10, § 8106 (1975)) to claims (for breach of contract and declaratory relief) that otherwise would be governed by California's four-year statute of limitations (Code. Civ. Proc., § 337, subd. 1). This result does not conflict with any fundamental policy of California. If the parties to a contract can shorten California's four-year limitations period to three *months*, we perceive no obstacle to applying a foreign state's three-*year* statute of limitations. Accordingly, the choice-of-law clause is enforceable.

Because plaintiffs' causes of action accrued no later than March 1989, when they learned that AMI's alleged misrepresentations were false, they had until March 1992 to file suit on their fifth and sixth causes of action. The original complaint was filed in October 1992, and the causes of action at issue were initially filed in May 1994 as part of the second amended complaint. Even if the disputed claims had been included in the original complaint, they would have been time-barred under the Delaware statute.

---

[17]In *Ashland*, the choice-of-law provision would have required the application of Kentucky's 15-year statute of limitations to a claim otherwise governed by California's 4-year limitations period. (129 Cal.App.3d at p. 793.) The court found that the choice-of-law provision was unenforceable because it violated California's policy of protecting state residents from stale claims. (*Id.* at p. 795.) While the result in *Ashland* may have been correct, we question two aspects of the court's analysis. First, the court stated that the choice-of-law provision did not have a substantial relationship to the case. However, the plaintiff, a corporation, was domiciled in the chosen state. Under *Nedlloyd, supra*, 3 Cal.4th at page 467, a party's domicile in the chosen state provides a sufficient nexus to support a choice-of-law clause. Second, the *Ashland* court suggested that a choice-of-law provision is unenforceable per se if the chosen state's statute of limitations is longer than California's. (129 Cal.App.2d at p. 794.) Such a blanket prohibition appears incorrect since California allows contracting parties to extend the statute of limitations, albeit with some restrictions.

In conclusion, the trial court properly sustained the demurrer without leave to amend as to the fifth and sixth causes of action in the second amended complaint.

B. *Estoppel to Plead Alter Ego Theory**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Accordingly, the trial court properly granted summary adjudication as to the first and second causes of action.

## DISPOSITION

The judgment is affirmed.

Ortega, Acting P. J., and Vogel (Miriam A.), J., concurred.

Appellants' petition for review by the Supreme Court was denied January 24, 1996.

---

*See footnote, *ante*, page 1532.