**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ABF CAPITAL CORP., a Delaware
Corporation,
          *Plaintiff-Appellant,*

          v.

EDWARD J. OSLEY, JR. and RENEE
PETERS,
          *Defendants-Appellees.*

No. 03-56349

D.C. No.
CV-02-09909-FMC

No. 03-56352

D.C. No.
CV-02-09908-FMC

OPINION

Appeal from the United States District Court
for the Central District of California
Florence-Marie Cooper, District Judge, Presiding

Submitted April 6, 2005*
Pasadena, California

Filed July 12, 2005

Before: Dorothy W. Nelson and Marsha S. Berzon,
Circuit Judges, and James C. Mahan,** District Judge.

Opinion by Judge Mahan

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable James C. Mahan, United States District Judge for the
District of Nevada, sitting by designation.

8119

**COUNSEL**

Brian J. Jacobs, Sherman Oaks, California, for the plaintiff-appellant.

Anne F. Wickers, Pillsbury Winthrop, San Francisco, California; Edward Osley, Pro se, Sandy, Utah, for the defendants-appellees.

## OPINION

MAHAN, District Judge:

Appellant ABF Capital Corp. ("ABF") has brought two appeals from two separate district court cases involving assumption agreements executed by appellees, Renee Peters (Case No. 03-56352) and Edward J. Osley (Case No. 03-56349). We address both appeals herein as they involve virtually identical facts and claims.

## BACKGROUND

In December 1982, Renee Peters ("Peters") purchased six limited partnership units of the New York limited partnership, Regent Energy Partners. That same month, Edward Osley ("Osley") purchased six limited partnership units of Oak Energy Partners, also a New York limited partnership. These limited partnerships thereafter entered into several sublease agreements with ABF.

These sublease agreements provided for annual royalties to be paid to ABF, but allowed the partnerships to defer the royalty if the partners assumed personal liability for the royalty amount. Peters and Osley both executed assumption agreements wherein they assumed personal responsibility for their pro rata share of the royalties.

Two provisions of these assumption agreements are at issue here: The parties selected New York law as governing their obligations and Peters and Osley waived the benefit of any statute of limitations defense.

Roughly seven years after the royalty payments became due and payable, ABF filed complaints for breach of contract on December 30, 2002, against Peters and Osley. Peters and Osley then moved to dismiss ABF's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)

because the suits were filed after the statute of limitations expired, and for failure to join a necessary party under Federal Rules of Civil Procedure 19 and 12(b)(7).

The district court, sitting in diversity, ruled the New York choice of law clause of the assumption agreements was enforceable and that New York law barred the waiver of the statute of limitations. Concluding ABF's claims were time-barred under the New York statute of limitations, the district court dismissed ABF's claims for breach of contract with prejudice. The order granting dismissal was entered on April 10, 2003, for Peters, and on April 11, 2003, for Osley.

ABF then moved in both cases to alter or amend the judgment under Federal Rule of Civil Procedure ("Rule") 59(e). Because no judgments had yet been entered, the district court construed ABF's motions as motions for reconsideration of the order granting dismissal. The district court denied both motions by minute orders entered on May 15, 2003. On July 30, 2003, ABF filed notices of appeal in both cases.

## DISCUSSION

### A.   Timeliness of Appeal

[1] If an order is appealable, then notice of appeal must be filed within 30 days of entry of the judgment subject to certain exceptions. Fed. R. App. P. 4(a)(1)(A). When judgment is entered for purposes of appeal depends upon Federal Rule of Civil Procedure 58, which requires every judgment to be set forth on a separate document. Fed. R. Civ. P. 58(a)(1).

[2] Here, the district court entered the orders granting dismissal under Rule 12(b)(6) on April 10, 2003, for Peters and on April 11, 2003, for Osley, but never entered judgment on a separate document to satisfy Civil Rule 58(a)(1). When a judgment is not set forth on a separate document, then it is deemed entered for purposes of appeal 150 days from entry

on the civil docket. Fed. R. App. P. 4(a)(7)(A)(ii). The deadline for notice of appeal then runs 30 days from entry of judgment. Fed. R. App. P. 4(a)(1)(A).

Peters and Osley challenge ABF's notices of appeal as untimely under Federal Rule of Appellate Procedure ("Appellate Rule") 4. Peters and Osley do not dispute ABF filed notice of appeal within 180 days of the order dismissing ABF's complaint on July 30, 2003. Rather, Osley and Peters argue ABF's notices of appeal were untimely because the 180-day timetable was shortened after ABF prematurely moved to alter or amend judgment under Civil Rule 59(e) on April 24, 2003, which the district court denied by minute order on May 15, 2003.

**[3]** Appellate Rule 4 provides that when a party timely moves to alter or amend judgment under Civil Rule 59, the time to appeal runs for all parties from entry of the order disposing of the motion. Fed. R. App. P. 4(a)(4)(A)(iv). We have never addressed whether a premature post-judgment motion to alter or amend may accelerate an existing deadline for notice of appeal.

**[4]** We do not agree with Peters and Osley that the district court's minute order denying ABF's attempted Civil Rule 59(e) motion to alter or amend shortened the deadline to appeal. The purpose of the separate document requirement is that the parties will know precisely when judgment has been entered and when they must begin preparing post-verdict motions or an appeal. *Ford v. MCI Communications Corp. v. Health and Welfare Plan*, 399 F.3d 1076, 1079 (9th Cir. 2005). If a premature post-judgment motion accelerated the time-line for appeal, it would violate the intent of Civil Rule 58 and Appellate Rule 4 to provide definite deadlines for appeal. *See Bankers Trust Co. v. Mallis*, 435 U.S. 381, 386 (1978) ("[The separate document] rule is designed to simplify and make certain the matter of appealability . . . The rule should be interpreted to prevent loss of the right to appeal, not

to facilitate loss.")(quoting 9 J. Moore, Federal Practice § 110.08[2], 120 n. 7 (1970)).

**[5]** Rule 58 and Appellate Rule 4 were recently amended "to work in conjunction" with each other. Fed. R. Civ. Proc. 58, Advisory Committee Note on 2002 Amendments. Those amendments "preserve[d]" the separate document rule for judgments such as the district court's order of dismissal. *Id.* Although exceptions to the separate document rule exist for Rule 59(e) motions, that "does not excuse the obligation to set forth the judgment on a separate document." *Id.* Moreover, while one purpose of the 2002 amendments was to assure that "appeal time does not linger on indefinitely," *id.*, nothing in the rules or the commentaries suggests an intent to *shorten* the time for appeal if a post-judgment is filed.

**[6]** Applying these principles to the present case "with common sense," *id.*, we conclude that the district court's minute orders on ABF's Rule 59(e) motions did not substitute for its obligation to "comply with th[e] simple obligation" of entering the judgment on a separate document. *Id.* Following the separate document rule best complies with the intent of Rule 58 and Appellate Rule 4 to provide a "clear signal" to potential appellants "that the time to appeal has begun to run." Fed. R. App. Proc. 58, Advisory Committee Note on 2002 Amendments. Judgment for purposes of Appellate Rule 4, therefore, could not have been entered until a separate document had been filed or 150 days had passed. Fed. R. Civ. Proc. 58(b)(2); Fed. R. App. Proc. 4(a)(7)(A)(ii). Until judgment was entered one of these two ways, no obligation to appeal the judgment arose. Nothing in the 2002 amendments provides otherwise, or suggests that Congress meant to require appeal of a final judgment *before* entry of judgment, because an early-filed motion questioning the announced-but-not-entered judgment had been denied.

**[7]** Accordingly, we hold that a premature post-judgment motion may not accelerate the deadline for appeal before a separate judgment has been entered.

B.   Choice of Law

After disposing of the initial jurisdictional question, the resolution of ABF's appeals is straightforward. Here, the district court, sitting in diversity, applied California choice of law principles to find the assumption agreements' New York choice of law clause enforceable. The district court further held application of New York's statute of limitations appropriate and the parties' attempted waiver of the statute of limitations ineffective under New York law.

[8] "In determining the enforceability of arm's-length contractual choice-of-law provisions, California courts shall apply the principles set forth in Restatement section 187, which reflects a strong policy favoring enforcement of such provisions." *Hambrecht & Quist Venture Partners v. Am. Med. Int'l, Inc.*, 38 Cal. App. 4th 1532, 1544 (1995) (quoting *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 465-66 (1992)). Under this approach, we must first determine (1) whether New York has a substantial relationship to the parties or the transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. *Nedlloyd*, 3 Cal. 4th at 465.

[9] A substantial relationship exists where one of the parties is domiciled or incorporated in the chosen state. *Nedlloyd*, 3 Cal. 4th at 467. Here, the agreements were between New York limited partnerships (Regent and Oak Energy) with Peters and Osley for the benefit of a corporation with its principal place of business in New York (ABF). Further, the assumption agreements stemmed from the underlying sublease agreements, which specified New York as the place of payment. These connections sufficiently establish a substantial relationship between the parties and New York and a reasonable basis to enforce the parties' New York choice of law provisions.

[10] We next consider whether application of New York law "is contrary to a *fundamental* policy of California." *Nedl-*

*loyd*, 3 Cal. 4th at 466 (emphasis in original). If New York law conflicts with a fundamental California policy then we evaluate whether California has a materially greater interest than the chosen state in resolution of the issue. *Id.* at 466.

Here, the California and New York statutes of limitations governing breach of contract claims differ. New York's statute is six years, whereas California's statute of limitations is four years. N.Y. C.P.L.R. § 213 (2003); Cal. Civ. Proc. Code § 337 (2003). More importantly, California permits waivers of the statute of limitations, while New York prohibits such waivers before accrual of the cause of action. Cal. Civ. Proc. Code § 360.5 (2003); N.Y. Gen. Oblig. Law § 17-103 (2003). Thus, ABF's seven-year-old claims are timely under California law, but time-barred under New York law.

**[11]** Despite this distinction between California and New York law, we agree with the district court that little if any conflict exists between application of New York law and fundamental California policy. "California courts accord contracting parties substantial freedom to modify the length of the statute of limitations." *Hambrecht*, 38 Cal. App. 4th at 1548. Further, California has "no fundamental state policy against applying a foreign jurisdiction's statutes of limitations to claims brought within California courts." *Id.* at 1548-49.

The primary policy behind California's statute of limitations is to protect California defendants and California courts from being required to litigate stale claims. *See Ashland Chemical Co. v. Provence*, 129 Cal. App. 3d 790, 794 (1982). Here, this policy is furthered by application of the New York statute of limitations, which will preserve California's interest in protecting California defendants from stale claims.

**[12]** For these reasons, we hold the parties' choice of New York law enforceable. Accordingly, the parties' purported waivers of the New York statute of limitations are ineffective,

and ABF's claims for breach of contract are barred by New York's six-year statute of limitations.

AFFIRMED.