

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CENTURY 21 REAL ESTATE LLC, | No. 12-17073 |
| Plaintiff - Appellee, | D.C. No. 2:10-cv-02751-WBS-GGH |
| v. | |
| ALL PROFESSIONAL REALTY, INC., DBA Century 21 All Professional, | MEMORANDUM[*] |
| Defendant, | |
| And | |
| CAROL WRIGHT and STEVEN WRIGHT, | |
| Defendants - Appellants. | |

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Submitted October 6, 2014[**]
San Francisco, California

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before: THOMAS, Chief Judge, and D.W. NELSON and LEAVY, Circuit Judges.

Carol and Steve Wright appeal the district court's judgment in favor of Century 21 Real Estate LLC ("Century 21"). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1. The district court did not err in finding the New Jersey choice-of-law provisions in the franchise agreements enforceable. Century 21 has its principal place of business and headquarters in New Jersey. Thus, the chosen state has both a substantial relationship with the transaction, and a reasonable basis exists for the parties' choice of law. *ABF Capital Corp. v. Osley*, 414 F.3d 1061, 1065 (9th Cir. 2005). Moreover, the application of New Jersey law here is not contrary to a fundamental policy of California. *See Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1152 (Cal. 1992). The franchise agreements already incorporate the good cause provision found in the California Franchise Relations Act. Cal. Bus. & Prof. Code § 20020. Although New Jersey appears not to have an unfair competition law similar to that of California, "[t]he mere fact that the chosen law provides greater or lesser protection than California law, or that in a particular application the chosen law would not provide protection while California law would, are not reasons for applying California law." *Medimatch, Inc. v. Lucent*

*Tech. Inc.*, 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000) (citing *Wong v. Tenneco*, 702 P.2d 570, 576–77 (Cal. 1985)).

2. The district court did not err in granting summary judgment to Century 21 on the parties' cross-claims for breach of contract. A New Jersey breach of contract claim requires a contract, breach of that contract, damages and that Century 21 performed its obligations under the contract. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d. Cir. 2007).

The Wrights' companies breached the franchise agreements by not paying required fees, not paying principal due on the note and by abandoning the Folsom office.

Century 21 did not breach the franchise agreements when it took no action to stop the recruiting of sales associates and employees by other franchisees. Per the franchise agreements, Century 21 had no right to meddle in issues relating to franchisees' sales associates or employees.

Century 21 also did not breach the agreements by divulging confidential information, as the agreements stated that any information provided to Century 21 was not confidential.

Century 21 did not breach the agreements by choosing not to address the unauthorized use of its marks by third parties. Century 21 had the sole option

3

whether to enforce its marks against third party infringers. Its choice not to enforce the marks is not a breach of the agreements.

Century 21 also did not breach the agreements by approving a franchise to operate out of the Folsom office that the Wrights abandoned. Because the Wrights' companies breached the franchise agreement for the Folsom office, there is no valid claim that Century 21 unlawfully facilitated a new franchise out of the same location.

Century 21 did not breach the agreements by allegedly failing to provide new tools and systems, and the Wrights' performance under the note was not excused. It is undisputed that Century 21 provided the Wrights' companies with access to the Century 21 system defined in the franchise agreements. Moreover, the franchise agreements specifically stated that the success of the franchise depended on the Wrights' efforts and that Century 21 made no guarantee or warranty that the Wrights would be successful. The Wrights have not created a triable issue that Century 21 failed to perform on the contract and that any such failure excused payment on the note.

Century 21 did not breach the agreements by preventing the Wrights from curing their defaults. Although the Wrights now claim they have the funds to pay

4

Century 21, they testified repeatedly before the district court that they did not have the financial ability to cure their defaults.

Century 21 did not terminate the franchise agreements in bad faith. As discussed, Century 21 had a legal right to terminate all four franchise agreements.

Century 21 did not breach the agreements by failing to provide relocation referrals. The franchise agreements do not require such referrals.

Finally, Century 21 did not breach the franchise agreements by failing to use national advertising fees to promote the Wrights' companies. The agreements specifically state that Century 21 had the sole discretion to manage the advertising fees and was not required to use the franchisees' contributions to benefit any particular franchise.

3.      The district court did not err in granting summary judgment to Century 21 on its breach of note claim. The Wrights did not satisfy the requirements for forgiveness of the loan, and they did not pay the principal amounts due. The Note specifically stated that if the Wrights' companies did not meet certain benchmarks each year, one-ninth of the principal would be due. Any oral representations by Century 21 did not excuse the Wrights from repaying the note.

4.      The district court did not err in finding the Wrights liable as guarantors. The Wrights signed personal guaranties for all of the franchise agreements. Those

5

guaranties required the Wrights to be responsible for their companies' obligations. The Wrights' companies were liable under the franchise agreements, and, thus, the Wrights were personally liable for those debts. *See Nat'l Westminster Bank N.J. v. Lomker*, 649 A.2d 1328, 1332 (N.J. Super. Ct. App. Div. 1994).

5.      The district court did not err in granting summary judgment to Century 21 on the Wrights' unfair competition claim brought pursuant to California law. New Jersey law applies to this action, thus a California claim is unavailable. *See Medimatch*, 120 F. Supp. 2d at 861–62 (dismissing California unfair competition claim as inconsistent with the enforceable New Jersey choice-of-law provision).

Even if the court found a California unfair competition claim viable here, it would fail on the merits. California prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. To the extent that the Wrights' unfair competition claims are duplicative of their breach of contract and other claims, they fail, as discussed. The Wrights also contend that Century 21 unfairly terminated their access to the Century 21 database on the same day the Sacramento and Hawaii franchises were terminated. Because the agreements were terminated lawfully, there is no triable issue that Century 21 unlawfully, unfairly or fraudulently terminated access to the database.

6

6.    The district court did not err in finding for Century 21 on the Wrights' claim that Century 21 breached the implied covenant of good faith and fair dealing. *See Wilson v. Amerada Hess Corp.*, 733 A.2d 1121, 1126–27 (N.J. 2001). Again, most of the Wrights' claims are duplicative of their breach of contract claims, and, as discussed, those claims do not succeed on the merits. The Wrights also argue that the terminations of the franchise agreements were pre-textual and that Century 21 had an improper motive. Century 21's motive is not relevant to the analysis. *Dunkin' Donuts Inc. v. Liu*, 79 F. App'x 543, 547 (3d. Cir. 2003) (holding "motivational analysis" not relevant because "non-payment constituted a material breach of the contract, which provided [the franchisor] legitimate grounds for termination").

7.    The district court did not err in finding for Century 21 on the Wrights' fraud claims. To establish common-law fraud under New Jersey law, the Wrights must show that (1) Century 21 made a material misrepresentation of presently existing or past fact; (2) Century 21 knew or believed that fact to be false; (3) Century 21 intended that the Wrights would rely on the misrepresentation; (4) the Wrights reasonably relied on Century 21's misrepresentation; and (5) the Wrights suffered damages. *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). "[T]o be actionable, fraud must relate to a present or preexisting fact and cannot

7

ordinarily be predicated on representations which involves things to be done in the future." *Anderson v. Modica*, 73 A.2d 49, 52 (N.J. 1950). However, "where a promise is given and the promisor knows at the time of the promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud." *Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1031 (D.N.J. 1995).

Representations made by Century 21 about future events, such as about developing new tools and systems or working out a payment plan with the corporate office, do not constitute fraud. Even if such representations were made, they constitute future events, and the Wrights have shown no more than "simple non-performance of the promise[s]." *Id.*

8. The district court did not err in finding for Century 21 on the Wrights' intentional interference with contractual relations claim. There are four elements to a tortious interference claim in New Jersey. The Wrights must show that (1) they have a protected interest; (2) Century 21 behaved with malice; (3) there is a reasonable likelihood that but for the interference, they would have realized an anticipated benefit from the protected interest; and (4) they have suffered economic damage. *Cargill Global Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 575 (D.N.J. 2010). Even assuming the other elements exist, the Wrights cannot

8

establish malice. Malice is "harm . . . inflicted intentionally and without justification or excuse." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (N.J. 1989). "The line clearly is drawn at conduct that is fraudulent, dishonest, or illegal and thereby interferes with a competitor's economic advantage." *Lamorte Burns & Co., Inc. v. Walters*, 770 A.2d 1158, 1171 (N.J. 2001). Century 21 provided notice to the Wrights about their defaults and ultimately terminated the four franchises. These actions were lawful and taken without malice.

9. The district court did not err in finding for Century 21 on the Wrights' negligent interference with business advantage claim. Even if such a claim exists in New Jersey, key to a claim for "'tortious interference with a prospective economic relatinoship [is] that the claim be directed against defendants who are not parties to the relationship.'" *Jenkins v. Region Nine Hous. Corp.*, 703 A.2d 664, 667 (N.J. Sup. Ct. App. Div. 1997) (quoting *Printing Mart*, 563 A.2d at 37). Century 21 is clearly a party to the relationship at issue, and the Wrights cannot maintain a negligent interference claim against it.

10. The district court also did not err in finding for Century 21 on the Wrights' claims that Century 21 violated California and Hawaii's franchise investment laws by terminating the franchise agreements without good cause. As discussed, only

9

New Jersey law applies to this action. Even if California or Hawaii law applied, however, Century 21 complied with the requirements of both sets of franchise laws. Cal. Bus. & Prof. Code § 20020 (requiring notice of default and an opportunity for to cure for good cause termination); Haw. Rev. Stat § 482E-6(2)(H) (same).

11. The district court did not err in enforcing the liquidated damages provision in the franchise agreements. "New Jersey courts view the enforceability of stipulated damages clauses 'as depending on whether the set amount is a reasonable forecast of just compensation for the harm that is caused by the breach and whether that harm is incapable or very difficult of accurate estimate.'" *Adler Eng'rs, Inc. v. Dranoff Prop., Inc.*, Civ. No. 14-921 (RBK/AMD), 2014 WL 5475189, at *10 (D.N.J. Oct. 29, 2014) (quoting *Wasserman's Inc v. Twp. of Middletown*, 645 A.2d 100, 106–07 (N.J. 1994)). Moreover, "liquidated, or stipulated damages clauses are 'deemed presumptively reasonable' in New Jersey, and the party challenging a stipulated damages clause '[bears] the burden of proving its unreasonableness.'" *Id.* (alteration in original) (quoting *Wasserman's*, 645 A.2d at 108). In order to be reasonable, a liquidated damages clause cannot do "more than compensate plaintiffs for their approximate actual damages caused by the breach." *Wasserman's*, 645 A.2d at 109. The liquidated damages provision

10

appears reasonable particularly because part of the lost profits calculation included the revenue the Wrights' companies earned during the contract term. These revenues are tied directly to the unpredictable real estate market. *See id.* at 107.

12. The district court did not err in finding trademark infringement and awarding treble damages to Century 21. A federal claim for trademark infringement requires showing (1) ownership of a registered trademark; (2) use of that mark by Century 21 before the alleged infringing use by the Companies; (3) the Companies' use of the trademark without Century 21's consent; and (4) that the Companies' use is likely to cause confusion, or to cause a mistake or to deceive. *Applied Info Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969–70 (9th Cir. 2007); 15 U.S.C. § 1114(1)(a).

It is undisputed that the first two conditions are satisfied. The Wrights continued to use the Century 21 mark without consent following termination of the franchise agreements. Moreover, the use of the marks was likely to cause confusion, as the Wrights' companies continued to use the Century 21 marks to attract business and sales agents, and they used the marks in the same industry as Century 21. *Century 21 Real Estate Corp v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (discussing likelihood of confusion by similarity of marks); *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979) (setting forth eight non-

11

exhaustive factors to determine likelihood of confusion), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003).

The district court also did not err in imposing treble damages. Treble damages are required upon a showing of willfulness absent any extenuating circumstances. 15 U.S.C. § 1117(b). The Wrights continued to use the marks for nine months after being given notice that the franchises were terminated and that they must discontinue use of the marks.

**AFFIRMED.**