FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ELIZABETH REULET FORD, aka
Elizabeth Reulet De Bourbon,
        *Plaintiff-Appellant,*

        v.

MCI COMMUNICATIONS
CORPORATION HEALTH AND WELFARE
PLAN, esa MCI Communications
Corporation Long Term Disability
Plan,
        *Defendant,*

        and

ITT HARTFORD INSURANCE GROUP,
esa Hartford Life & Accident
Insurance Company; HARTFORD
LIFE, esa Hartford Life & Accident
Insurance Company,
        *Defendants-Appellees.*

No. 03-55216

D.C. No.
CV-01-05356-GHK

OPINION

Appeal from the United States District Court
for the Central District of California
George H. King, District Judge, Presiding

Argued and Submitted
August 3, 2004—Pasadena, California

Filed February 28, 2005

Before: William C. Canby, Jr., David R. Hansen,* and
Johnnie B. Rawlinson, Circuit Judges.

*The Honorable David R. Hansen, Senior U.S. Circuit Judge for the
Eighth Circuit, sitting by designation.

Opinion by Judge Rawlinson

**COUNSEL**

Daniel D. Dydzak, Esq., Los Angeles, California, for the plaintiff-appellant.

Carolyn A. Knox, Seyfarth Shaw LLP, San Francisco, California, for the defendants-appellees.

**OPINION**

RAWLINSON, Circuit Judge:

This case requires us to tread into the thorny thicket of the separate judgment rule. Having done so, we conclude that consideration of Rule 58 of the Federal Rules of Civil Procedure and Rule 4 of the Federal Rules of Appellate Procedure

results in the conclusion that the order granting summary judgment in this case was sufficiently final and the appeal was timely. On the merits, we affirm the district court's ruling that Elizabeth Ford's (Ford) ERISA claims fail.

## I. Background and Procedural History

### A. The Long Term Disability Plan and the Claim

Ford was employed by MCI and was a member of the MCI Communications Long Term Disability Plan (Plan). The Plan was established and is maintained by MCI and its successor corporate entity, Worldcom, Inc., as an employee welfare benefit plan. MCI is listed as the "Plan Administrator/Plan Sponsor" in the materials provided to the Plan members. ITT Hartford Insurance/Hartford Life (Hartford) is the claims administrator for the plan. The Plan does not list Hartford as a plan administrator.

Ford has coccidioidomycosis and fibromyalgia, conditions which she asserts originated during the course and scope of her work for MCI. Contending that Hartford wrongfully denied long-term disability (LTD) benefits coverage, Ford brought this action against Hartford[1] asserting claims under various provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq.

Specifically, Ford sought relief under: 1) 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(2) for wrongful denial of LTD benefits; 2) 29 U.S.C. § 1132(a)(3) for general equitable relief; and 3) 29 U.S.C. §§ 1025(c) and 1132(a)(4) for wrongful failure to notify Ford of accrued vested benefits.[2]

---

[1] Ford also sued MCI, but those claims were stayed due to pending bankruptcy proceedings.

[2] In her Opening Brief, Ford only addressed the first two claims. Therefore, the third claim is waived. *See Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[W]e review only issues which are argued specifically and distinctly in a party's opening brief.") (citation omitted).

### B.    The District Court's Decision and Ford's Appeal

Hartford filed a motion for summary judgment on the ground that it is not a proper party in an action to recover ERISA benefits. The district court granted summary judgment in favor of Hartford, holding that Hartford was not a proper party to the action, being neither the Plan nor the Plan Administrator.

The Minute order containing the district court's decision was entered into the court's record on November 18, 2002. No other document was filed by the court reflecting the court's summary judgment. The district court record does not reflect that the minute order was served on either party. Ford's attorney received the minute order on January 2, 2003, when the district court faxed it at the request of a law clerk working for Ford's counsel. As a result, Ford was not aware that her action had been dismissed until after the expiration of the 30-day period to file a timely appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure.

Ford argues that this Court should excuse her admittedly untimely notice of appeal, because the district court did not serve the decision upon the parties and she filed her appeal within thirty days[3] of learning of the district court's grant of summary judgment.

Ford also appeals the district court's grant of summary judgment in favor of Hartford. Specifically, Ford maintains that the Court erred in determining that Hartford was not a proper party to this action, because Hartford "functioned as" the Plan Administrator. Additionally, Ford asserts that Hartford was liable as a fiduciary.

---

[3]Thirty days from January 2, 2003, the date the district court faxed the district court's order to Ford's attorney, was February 1, 2003, a Saturday. February 3, the date Ford filed the notice of appeal, was a Monday.

## II. Standard of Review

"The timeliness of a notice of appeal is reviewed *de novo*." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 665 (9th Cir. 2003) (citation omitted). A grant of summary judgment is reviewed *de novo*. The court must determine, after viewing the evidence in the light most favorable to the nonmoving party, whether the district court correctly applied the relevant substantive law and whether any genuine issues of material fact exist for trial. *Fortyune v. Amer. Multi-Cinema Inc.,* 364 F.3d 1075, 1080 (9th Cir. 2004). Likewise, this Court reviews *de novo* the district court's interpretation of ERISA. *Everhart v. Allmerica Fin. Life Ins. Co.,* 275 F.3d 751, 753 (9th Cir. 2001). Summary judgment may be affirmed on any ground supported by the record. *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 638 (9th Cir. 2004).

## III. Analysis

### A. Timeliness of the Appeal

**[1]** Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure (Appellate Rule 4) provides that "[i]n a civil case . . . the notice of appeal . . . must be filed with the district clerk within 30 days after the judgment or order appealed from is entered." Fed. R. App. P. 4(a)(1)(A). A judgment or order is not entered within the meaning of this rule unless it is entered in compliance with Rule 58 of the Federal Rules of Civil Procedure (Rule 58). *Casey v. Albertson's, Inc.*, 362 F.3d 1254, 1258 (9th Cir. 2004). Rule 58(a)(1) provides that "every judgment must be set forth on a separate document." *Id.* at 1257 (alterations omitted).

Although neither party raised the separate judgment requirement of Rule 58(a)(1), we may *sua sponte* bring this issue to the attention of the parties, and we did so at oral argument. *See Corrigan v. Bargala*, 140 F.3d 815, 817 (9th Cir. 1998) (explaining request for supplemental briefing when the

parties did not address whether or not a separate judgment was entered and the record was unclear). Accordingly, the question we now face is whether the district court's minute order suffices as a separate document to satisfy Rule 58(a)(1).

**[2]** "The separate document requirement exists so that the parties will know exactly when the judgment has been entered and they must begin preparing post-verdict motions or an appeal." *Casey,* 362 F.3d at 1258 (citation and alteration omitted). In *Casey*, we held that the failure to file a separate judgment did not preclude appeal where the parties believed that a final judgment had been entered. *Id.* at 1258-59. We relied in part on the fact that the minute order ended with the language "**IT IS SO ORDERED**." *Id.* at 1259 (quoting *Beaudry Motor Co. v. Abko Props., Inc.*, 780 F.2d 751, 754-55 (9th Cir. 1986)). We also relied upon the fact that the unsuccessful party filed a Rule 60(b) motion to set aside the order, evincing a belief that the judgment was final.

**[3]** Exactly the same language was used in the minute order terminating this case. Ford similarly manifested a belief that the judgment was final by filing an appeal. *See Casey,* 362 F.3d at 1259 (discussing the filing of an appeal as an acknowledgment of finality). Informed by our rulings in *Casey* and *Beaudry*, we are persuaded that the separate document rule does not preclude a finding that the district court's judgment was sufficiently final in this case. *See id.*

Our determination that the minute order entered in this case constituted a final judgment despite the separate document requirement embodied in Rule 58 does not end our inquiry. We must now turn to the second complication in this case— the district court's failure to give parties notice of entry of judgment, in this case effectuated by entry of a minute order.

There are two procedural rules that potentially govern the timeliness of an appeal when the court failed to enter a sepa-

rate judgment document and failed to provide notice of entry of the court's ruling resolving the case.

The first potentially applicable rule is Rule 58 of the Federal Rules of Civil Procedure, as amended. In 2002, Rule 58 was amended to add a provision specifying when judgment is entered for purposes of the procedural rule. *See* Fed. R. Civ. P. 58, Advisory Committee Notes, 2002 Amendments.[4]

As amended, Rule 58 provides:

. . .

    (b)   Time of Entry. Judgment is entered for purposes of these rules:

    (1)   if Rule 58(a)(1) does not require a separate document, when it is entered in the civil docket under Rule 79(a),[5] and

    (2)   if Rule 58(a)(1) requires a separate document,[6] when it is entered in the civil docket under Rule 79(a) and when the earlier of these events occurs:

    (A)   when it is set forth on a separate document, or

    (B)   when 150 days have run from entry in the civil docket under Rule 79(a).

Fed. R. Civ. P. 58(b).

---

[4]No comparable provisions existed prior to these amendments.

[5]Compliance with Rule 79(a) is not contested.

[6]There is no dispute that the ruling granting summary judgment is one of the rulings for which a separate document is required under Rule 58.

**[4]** The 2002 Amendments were effective Dec. 1, 2002. Fed. R. Civ. P. 58, Credit(s). As of that date, entry of a judgment required to be entered by separate document is effective when the earlier of two events occurs: (1) a separate judgment document is entered, or (2) 150 days have run from the entry of the [non-separate] order in the docket. Fed. R. Civ. P. 58(b)(2). The minute order in this case was entered on November 18, 2002. Because no separate judgment document was entered, the amended rule would result in entry of judgment 150 days after November 18, or April 17, 2003. The notice of appeal, filed on February 3, 2003, was therefore timely.[7]

This conclusion is supported by two subsections of Fed. R. App. P. 4. Rule 4(a)(1)(A) provides, with exceptions not relevant here, that a notice of appeal must be filed "within 30 days after the judgment or order appealed from is entered." Rule 4(a)(7)(A)(ii) provides that a judgment required by Fed. R. Civ. P. 58(a) to be set forth on a separate document is "entered" when the earlier of two events has occurred: the judgment is set forth on a separate document or 150 days have run from entry of the judgment in the civil docket under Fed. R. Civ. P. 79(a).

Considering these two rules together results in the following outcome: Because no separate document was filed, judgment was entered 150 days after November 18, 2002, the date

---

[7]Prior to the amendments to Rule 58, the lack of a separate document resulted in the appeal period never beginning to run at all. *See, e.g., Corrigan v. Bargala*, 140 F.3d 815, 819 (9th Cir. 1998) (holding that the time to file an appeal never began to run because the clerk failed to enter a separate judgment as required by Rule 58). Accordingly, if the 2001 version of the procedural rules were applied, Ford's appeal would be timely without question. However, because we apply the rules in effect at the time the appeal is decided, the amended rule governs. *See Austin v. City of Bisbee, Ariz.*, 855 F.2d 1429, 1432 (9th Cir. 1988) ("An appellate court must apply the law in effect at the time it renders its decision.") (citation omitted).

the order was entered on the docket, or April 17, 2003. Ford's notice of appeal was filed on February 3, 2003, before the judgment was deemed entered under Rule 58.

The fact that the appeal was filed before entry of judgment under the terms of Rule 58 is not problematic, because Appellate Rule 4(a)(2) provides that the filing of a premature notice of appeal "is treated as filed on the date of and after the entry." Fed. R. App. P. 4(a)(2). In sum, we hold that Ford's notice of appeal was timely under Appellate Rule 4(a), as construed in harmony with Rule 58.

## B. Ford's claim under 29 U.S.C. § 1132(a)(1)(B)

Now that we have untangled the complicated procedural thicket around this case, we turn to the merits of the appeal.

29 U.S.C. § 1132(a)(1)(B) provides that "[a] civil action may be brought by a participant or beneficiary . . . to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).

**[5]** ERISA authorizes actions to recover benefits against the Plan as an entity, 29 U.S.C. § 1132(d)(1), and against the Plan's administrator. *See* 29 U.S.C. § 1132(a)(1)(B); *see also Everhart*, 275 F.3d at 754. In *Everhart*, the claimant sued the insurance company that served as the *claims administrator. Id.* at 752-54. We compared *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324 (9th Cir. 1985) and similar cases limiting ERISA actions brought under 29 U.S.C. § 1132(a)(1)(B) to the Plan as an entity, with *Taft v. Equitable Life Assur. Soc'y*, 9 F.3d 1469, 1471 (9th Cir. 1993) and analogous cases upholding actions against plan administrators. *Everhart*, 275 F.3d at 754. We concluded that "[u]nder either *Gelardi* or *Taft* and their respective progeny, [the claimant]

may not sue the plan's *insurer* for additional ERISA plan benefits." *Id.* (emphasis in the original).

ERISA defines a plan administrator as "the person specifically so designated by the terms of the instrument under which the plan is operated[.]" 29 U.S.C. § 1002(16)(A)(i). The Plan in this case designated MCI as the plan administrator and Hartford as the claims administrator.

Ford argues that Hartford *is* the plan administrator because it had discretionary authority to determine eligibility for benefits and was functioning as the plan administrator. The Plan Administrator, MCI, delegated the "exclusive discretion, authority, responsibility, and right to interpret and construe the Plan's terms and to determine all questions of eligibility under the Plan and to exercise the fullest discretion permitted by law regarding Plan administration" to the claims administrators, including Hartford.

The "discretion" argument was considered and rejected by us in *Everhart*:

> The dissent proposes a new test for suits under § 1132(a)(1)(B) whereby suits for benefits could be brought against a party that is neither the plan itself nor the plan administrator, but that makes "the discretionary decisions as to whether benefits were owed." Dissent at 17345. The dissent cites no authority for this proposition. It is contrary to the cases discussed in text in this and other circuits that limit § 1132(a)(1)(B) suits to plans or plan administrators, and—significantly—it seems to confuse or conflate a § 1132(a)(1)(B) suit with a § 1132(a)(3) suit for breach of fiduciary duty . . .

275 F.3d at 754 n.3 (citation omitted).

[6] That said, we explicitly rejected the argument that an insurer who "controlled the administration of the plan and

made the discretionary decisions as to whether benefits were owed" could be sued under § 1132(a)(1)(B). *See id.* at 759 (Reinhardt, J., dissenting).

## C.  Ford's claim under 29 U.S.C. § 1132(a)(2)

ERISA authorizes the Secretary or a Plan participant, beneficiary, or fiduciary to bring a suit for appropriate relief under 29 U.S.C. § 1109. 29 U.S.C. § 1132(a)(2).

Section 1109 provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

[7] However, "[a] fiduciary's mishandling of an individual benefit claim does not violate any of the fiduciary duties defined in ERISA." *Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock,* 861 F.2d 1406, 1414 (9th Cir. 1988). Ford is foreclosed from seeking and receiving "an individual remedy for damages under [29 U.S.C. § 1109(a)] because that type of remedy [is] not consistent with ERISA's emphasis on the relationship between a fiduciary and the employee benefit plan as a whole." *Id.*

## D.  Ford's claim under 29 U.S.C. § 1132(a)(3)

29 U.S.C. § 1132(a)(3) authorizes "a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which vio-

lates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3). "To establish an action for equitable relief under . . . 29 U.S.C. § 1132(a)(3), the defendant must be an ERISA fiduciary acting in its fiduciary capacity, and must violate ERISA-imposed fiduciary obligations[.]" *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004) (citations, internal quotation marks, and alteration omitted).

**[8]** The Supreme Court has held that "[29 U.S.C. § 1132(a)(3)] is a catchall provision that acts as a safety net, offering appropriate equitable relief for injuries caused by violations that [29 U.S.C. § 1132] does not *elsewhere* adequately remedy." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 221 n.5 (2002) (citation, internal quotation marks, and alteration omitted) (emphasis added). Because Ford asserted specific claims under 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(2), she cannot obtain relief under 29 U.S.C. § 1132(a)(3), ERISA's "catchall" provision. *See id.*

In sum, Ford failed to raise a material question of fact regarding Hartford's liability under ERISA, either as a claims administrator or a fiduciary. Because specific claims were asserted under discrete ERISA provisions, the "catchall" provision is not available as a source of relief. Thus, entry of summary judgment in favor of Hartford was proper. *See Fortyune,* 364 F.3d at 1080.

## IV.   Conclusion

No separate document was entered setting forth the judgment in this case. Because Ford appealed within the time limits set forth in Appellate Rule 4(a), as construed in harmony with Rule 58, her appeal was timely. We affirm the district court's grant of summary judgment in favor of Hartford

because: 1) ERISA claims may not be brought against the claims administrator; 2) claims asserting a breach of fiduciary duty are not cognizable when the asserted breach is predicated upon the mishandling of an individual claim; and 3) Ford's assertion of claims under specific ERISA provisions precluded relief under ERISA's "catchall" provision.

**AFFIRMED.**