Toni L. TOOHEY, individually, and as Personal Representative of the Heirs and the Estate of Frank R. Toohey, Deceased, Plaintiff,

v.

The WYNDHAM WORLDWIDE COR-PORATION HEALTH & WELFARE PLAN, Employee Benefits Committee Wyndham Worldwide Corporation, Life Insurance Company of North America, and Wyndham Worldwide Corporation, Defendants.

Civil No. 09–88–ST.

United States District Court, D. Oregon.

Dec. 2, 2009.

Christopher L. Cauble, Cauble, Dole, Sorenson & Ransom, LLP, Grants Pass, OR, Louis S. Franecke, Franecke Law Group, San Rafael, CA, Walter L. Cauble, Cauble, Dole & Sorenson, Grants Pass, OR, for Plaintiff.

William T. Patton, Lane Powell, PC, Portland, OR, Douglas C. Berry, Graham & Dunn PC, Seattle, WA, for Defendants.

## ORDER

HAGGERTY, District Judge:

Magistrate Judge Stewart referred to this court a Findings and Recommendation [62] in this matter. The Magistrate Judge recommends that defendants' Motions to Dismiss [45 and 50] and Motions to Strike Jury Demand [47 and 52] be granted. No objections were filed, and the case was referred to this court.

The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R.Civ.P. 72(b). When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation of the Magistrate. *Campbell v. U.S. Dist. Ct.*, 501 F.2d 196 (9th Cir.1974).

No clear error appears on the face of the record. This court adopts the Findings and Recommendation.

**CONCLUSION**

The Findings and Recommendation [62] is ADOPTED.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATIONS

STEWART, United States Magistrate Judge:

**INTRODUCTION**

Plaintiffs, Toni L. Toohey and her two

sons,[1] bring this action individually and on behalf of the heirs and estate of Frank R. Toohey ("Toohey") to recover sums allegedly due under insurance contracts purchased by Toohey and his employer and issued by Life Insurance Company of North America ("LINA"). On July 21, 2009, this court dismissed the First Amended Complaint ("FAC") without prejudice for failure to state a claim upon which relief could be granted. *See* Order adopting Findings and Recommendations (docket # 43). The FAC alleged eight claims for relief, seven arising under state-law theories of contract, tort, and fraud, and one seeking benefits under the Employee Retirement Income Security Act ("ERISA"), 29 USC § 1001, *et seq.* The court found that ERISA preempted the state-law claims and dismissed the ERISA claim for failure to name the proper party as a defendant.

On August 18, 2009, plaintiffs filed a Second Amended Complaint ("SAC") alleging five claims for relief under ERISA and adding several new defendants. The First Claim realleges a claim for benefits under § 502(a)(1)(B) (codified at 29 USC § 1132(a)(1)(B)), but now names the proper parties as defendants, namely the Wyndham Worldwide Corporation Health & Welfare Plan ("the Plan") and the Wyndham Worldwide Corporation Employee Benefits Committee ("Plan Administrator"). The Second Claim alleges equitable estoppel against the Plan and Plan Administrator. The Third and Fourth Claims allege ERISA violations by LINA, the Claims Administrator. Whereas the Third Claim seeks injunctive or other appropriate equitable relief pursuant to § 502(a)(3) (codified at 29 USC § 1132(a)(3)), the Fourth Claim alleges a breach of fiduciary duty pursuant to §§ 409 & 502(a)(2) (codified at 29 USC

§§ 1109(a), 1132(a)(2), respectively). The Fifth Claim alleges breach of fiduciary duty by the Plan Sponsor, Wyndham Worldwide Corporation ("WWC"). Plaintiffs seek injunctive, equitable, and monetary relief against all defendants and also demand a trial by jury pursuant to FRCP 38(b). This court has jurisdiction over these claims pursuant to 29 USC § 1132(e) and 28 USC § 1331.

LINA moves to dismiss the Third and Fourth Claims pursuant to FRCP 12(b)(6) (docket # 45) and moves to strike the jury trial demand pursuant to FRCP 12(f) (docket # 47). The remaining Wyndham defendants join both of LINA's motions and move to dismiss the Fifth Claim pursuant to FRCP 12(b)(6) (docket # 50), and also move to strike the jury trial demand (docket # 52). For the reasons that follow, these motions should be GRANTED.

### STANDARDS

Motions to dismiss for failure to state a claim pursuant to FRCP 12(b)(6) are governed by the standards recently enunciated in *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (May 18, 2009), and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). While the federal pleading standard under FRCP 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 129 S.Ct. at 1949, quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. In order to survive a motion to dismiss for failure to state a claim pursuant to FRCP 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

---

1. Toohey does not allege the age of her two sons. If they are minors, no motion has been made as yet to appoint them a guardian *ad litem.*

its face.'" *Id.*, quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. Thus,

> [i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 1950 (the "*Twombly* two-step").

In evaluating a motion to dismiss, the court must accept the allegations of material fact as true, subject to the limits identified in *Twombly*, and construe those allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). In addition to the allegations of the complaint, the court may also consider documents whose authenticity no party questions which are attached to, or incorporated by reference into, the complaint, as well as matters capable of judicial notice. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir.2005); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.), *cert. denied*, 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002); *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C.Cir.2006). The court need not accept as true allegations in the complaint that contradict these sources. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir.2008), citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001).

## FACTUAL ALLEGATIONS

The factual allegations of the SAC are substantially the same as alleged in the FAC. Additional facts are provided by those exhibits submitted in connection with the motion to dismiss the FAC which are incorporated by reference into the SAC.

Wyndham Resort Development Corporation ("Wyndham Resort Development"), a subsidiary of WWC, employed Toohey as an account executive until August 4, 2008, when he died in a plane crash. SAC, ¶¶ 12, 13, 19. The plane was a private aircraft piloted by Jason Ketcheson, also an employee of Wyndham Resort Development. *Id.*, ¶ 20. The plane departed from Seaside, Oregon, and subsequently crashed in Gearhart, Oregon, killing Toohey. *Id.*

As an employee of Wyndham Resort Development, Toohey participated in a benefit package sponsored by WWC. *Id.*, ¶¶ 13, 14. This benefit package provided employees with medical coverage, disability insurance, life insurance, accidental death and disability ("AD & D") insurance, and business travel ("BTA") insurance (collectively, "the Plan"). *Id.*; Patton Decl. (docket #25), Ex. A, pp. 19–31 & Ex. B.

At the time Toohey died, multiple insurance policies funded these benefits, including Policy Nos. OK 980073, ABL 980053, and ABL 980060. SAC, ¶ 14; Patton Decl., Exs. C–E; Berry Decl. (docket #31–2), Exs. A–C. WWC obtained these three policies from LINA. Patton Decl., Exs., C, D & E.

Policy OK 980073 was an AD & D policy. Berry Decl., ¶ 1 & Ex. A. WWC paid the premium on this coverage. *Id.*, Ex. A, p. 21 & Ex. C, p. 67. Participants also could elect additional voluntary AD & D coverage for an additional premium that they were responsible for paying. *Id.*, Ex. A, pp. 8, 21, Ex. B, p. 14 & Ex. C, pp. 65, 67.

Policies ABL 980053 and ABL 980060 provided BTA coverage. *Id.*, Ex. B, p. 9, Ex. D, pp. 4–6 & Ex. E, pp. 6–7, 10.

Coverage under the BTA policies was automatic for all WWC employees who were eligible to participate in the Plan. *Id.,* Ex. A, p. 4. WWC paid the entire premiums for both BTA policies. *Id.,* Ex. A, p. 21, Ex. D, p. 5 & Ex. E, p. 5.

All three polices contained the following language:

> This Policy has been issued in conjunction with an employee welfare benefit plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). This Policy is a Plan document within the meaning of ERISA. As respects the Insurance Company, it is the sole contract under which benefits are payable by the Insurance Company. Except for this, it shall not be deemed to affect or supersede other Plan documents.

> The Plan Administrator has appointed the Insurance Company as the named fiduciary for deciding claims for benefits under the Plan, and for deciding any appeals of denied claims.

*Id.,* Ex. C, p. 41, Ex. D, p. 29, & Ex. E, p. 20.

WWC never provided Toohey or plaintiffs with copies of the policies, binder letters, or other documents which formed the insurance contracts, but did provide Toohey with several booklets purporting to describe the benefits available under the Plan. SAC, ¶¶ 15, 16. These included the "About Your Participation" booklet, which contained general information about the administration of the Plan, and the "Life and Accident Insurance Benefits" booklet, which purported to describe the life, AD & D, and BTA coverages under the Plan. *Id.,* ¶ 16; Patton Decl., Ex. A, pp. 2–3, 15 & Ex. B, pp. 3–4; Korver Decl. (docket # 21), Ex. 1 (collectively referred to as the summary plan description ("SPD")). The SPD identifies WWC as the Plan's sponsor and the WWC Employee Benefits Committee as the Plan Administrator. Korver

Decl., Ex. 1, p. 19; Patton Decl., Ex. A, p. 19. The Plan designates LINA as the Claims Administrator. Patton Decl., Ex. C, p. 41, Ex. D, p. 29 & Ex. E, p. 20. Under the Plan, LINA was responsible for providing the SPD to the Plan Administrator for dissemination to plan participants and beneficiaries. SAC, ¶ 17.

## FINDINGS

### I. *Motions to Strike Jury Demands*

All defendants move to strike plaintiffs' jury trial demand because "there is no right to a jury trial in ERISA cases." *Ingram v. Martin Marietta LTD Income Plan for Salaried Employees,* 244 F.3d 1109, 1114 (9th Cir.2001), citing *Thomas v. Oregon Fruit Prods. Co.,* 228 F.3d 991, 996–97 (9th Cir.2000). The cases plaintiffs cite in opposition to these motions either are not on point or not the law of the Ninth Circuit. Therefore, the court should grants defendants' motions and strike plaintiffs' jury trial demand from the SAC.

### II. *Motions to Dismiss*

The SAC makes the same two main contentions as in the FAC. First, plaintiffs claim that Toohey's death was covered under the Plan and that defendants have wrongfully denied their claim for benefits. Second, in the event Toohey's death was not covered by the Plan, plaintiffs claim that either WWC, LINA, or both, are liable for erroneously leading Toohey to believe that the cause of his death would be covered under the Plan. Although plaintiffs couch these allegedly misleading acts in terms of violations of assorted fiduciary duties, the remedy plaintiffs ultimately seek is clear: if they cannot recover under the terms of the Plan, then they seek to either estop defendants from denying coverage under the Plan or to recover the value of the benefits directly from the Plan's fiduciaries.

Defendants move to dismiss the Third through Fifth Claims on the ground that a plaintiff seeking individual, monetary benefits under an ERISA-governed employee benefits plan may not bring claims pursuant to § 502(a)(2) or (a)(3), but is limited solely to the relief available under § 502(a)(1)(B). Plaintiffs respond that they seek more than simple monetary damages and have adequately alleged claims under these other provisions.

### A. ERISA's Remedial Scheme

"ERISA is a comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system." *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (internal quotation marks omitted). "Congress enacted ERISA to 'protect ... the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) (alterations in original), quoting 29 USC § 1001(b). Accordingly, ERISA includes a "carefully crafted and detailed enforcement scheme" found in § 502. *Knudson*, 534 U.S. at 209, 122 S.Ct. 708 (citation and internal quotation marks omitted). Section 502 provides, in part:

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; . . .

29 USC § 1132(a).

The First and Second Claims arise under § 502(a)(1)(B), and no defendant challenges their sufficiency. Defendants seek to dismiss the remaining claims arising under § 502(a)(2).

### B. Section 502(a)(2) (Fourth and Fifth Claims)

■ Section 502(a)(2) permits a beneficiary to bring a claim for "appropriate relief under section 1109 [§ 409]." Section 409(a), in turn, provides that

[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 USC § 1109(a).

The Fourth and Fifth Claim are brought pursuant to §§ 409 and 502(a)(2) and allege violations of various fiduciary duties that defendants allegedly owed to the Plan and its participants and beneficiaries.

■ It is well-settled that a claim for breach of fiduciary duty under § 409 may

only be brought to benefit the Plan as a whole. *See Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 140, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (agreeing with petitioner's contention that "recovery for a violation of § 409 inures to the benefit of the plan as a whole"); *Paulsen v. CNF Inc.,* 559 F.3d 1061, 1073 (9th Cir.2009) ("The Supreme Court has held that recovery for a violation of 29[USC] § 1109 for breach of fiduciary duty inures to the benefit of the plan as a whole, and not to an individual beneficiary."), *petition for cert. filed,* —— USLW —— (Sept. 23, 2009) (No. 09–356); *Cinelli v. Sec. Pac. Corp.,* 61 F.3d 1437, 1445 (9th Cir.1995) ("Individual beneficiaries may bring fiduciary actions against the plan fiduciaries, but they must do so for the benefit of the plan and not their individual benefit."). Defendants argue that because the SAC clearly seeks only to recover benefits plaintiffs believe are personally due to them under the Plan, relief is not available under § 502(a)(2).

Plaintiffs make several arguments in opposition. First, they counter that they seek more than money damages but have also asked for equitable and injunctive relief. Second, they argue that because both LINA and WWC wear "two or more hats," their liability must be analyzed based on the role they were playing at the time that they engaged in various fiduciary duties. Third, they argue that LINA has harmed the Plan by accepting premium payments and by failing to pay benefits due under the Plan, thus depriving the Plan of the assets of payments from the insurance policies and the benefits due to them. Finally, they contend that the full fiduciary role of WWC is still unknown, and it would be premature to dismiss this claim until full discovery has been permitted to uncover what role WWC (and potentially other defendants) has played.

These arguments are nonresponsive to the controlling precedent on point. It is incomprehensible how LINA's failure to pay insurance proceeds to plaintiffs harmed the Plan. The Plan is composed of insurance policies that accept premiums for the promise of paying benefits upon the occurrence of covered events. The premiums are due even if LINA never pays a single claim, and the only person injured by a failure to pay benefits is the party to whom benefits are due. There is no pot of money the Plan maintains or invests on behalf of its beneficiaries that has been reduced or otherwise impacted by defendants' actions. None of the fiduciary breaches alleged in the SAC added or subtracted anything from the assets of the Plan. Plaintiffs' attempt to shoehorn their claims into arguments more properly made with respect pension plans or IRAs is unavailing. *See, e.g., Cline v. Indus. Maint. Eng'g & Contracting Co.,* 200 F.3d 1223 (9th Cir.2000) (alleging Plan was injured by failure of employer to make contributions to an IRA created by the employer for the benefit of its employees).

But more importantly, regardless of whether the Plan may have suffered an injury or whether WWC, LINA, or any other entity has violated fiduciary duties, *Russell* and its progeny hold that a claim under § 502(a)(2) is available only for a plaintiff seeking to benefit the Plan. While plaintiffs attempt, through creative drafting, to show that they are seeking to benefit the Plan, in fact, the Plan will gain no benefit from this lawsuit. The prayer for relief shows that plaintiffs have only one thing in mind, namely the recovery of some amount of money paid directly to them. The first prayer is for a judgment and order that the Plan and Plan Administrator pay all benefits due plaintiffs under the Plan, an amount equal to $2,500,000. The second prayer is for an affirmative injunction on behalf of the Plan to LINA that monies be paid "in amounts according to benefits calculations under the insur-

ance policies alleged in an amount of at least $2,500,000 or according to proof at trial, *and for purposes of payment to Plaintiffs*" as beneficiaries under the policy. SAC, p. 14 (emphasis added). The third prayer also seeks a judgment against "LINA and/or Wyndham for breach of fiduciary duties in an amount of at least $2,500,000." *Id.* Thus, when this case is over, if plaintiffs are successful, they will have recovered some amount of money from the Plan. Whether they try to color it as a money judgment, an affirmative judgment ordering LINA to pay the benefits, or restitution of unlawfully withheld benefits, it is clear that they seek $2,500,000 or the benefits available under the Plan.

Because plaintiffs' claim is one for personal monetary benefits, it does not seek to benefit the Plan as a whole. Accordingly, plaintiffs cannot seek relief under § 502(a)(2).

### C. § 502(a)(3) (Third and Fifth Claims)

■ The Third Claim, and arguably the Fifth Claim, seek to recover "other appropriate equitable relief" under § 502(a)(3). Individual equitable relief for breach of fiduciary duty is only available under this "catchall" provision in certain circumstances. As outlined by the Supreme Court in *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), § 502(a)(3) authorizes some individualized claims for breach of fiduciary duty, but only "for injuries caused by violations that § 502 does not elsewhere adequately remedy." Moreover, the remedies available under this subsection are limited to those remedies that were "traditionally viewed as 'equitable,' such as injunction or restitution." *Mertens*, 508 U.S. at 255, 113 S.Ct. 2063. Thus, in order to have an actionable claim under § 502(a)(3), a plaintiff must

have no other adequate avenue of relief under ERISA and must seek relief that has traditionally been viewed as equitable. Although a failure to meet either of these conditions precludes a claim under § 502(a)(3), plaintiffs' claims fail on both accounts.

The First Claim seeks to recover benefits plaintiffs believe are due under the Plan. They admit that § 502(a)(1)(B) is available to seek these benefits. Because § 502(a)(1)(B) provides plaintiffs with a specific remedy, they may not seek relief under § 502(a)(3). *Varity*, 516 U.S. at 512, 116 S.Ct. 1065; *see also, Ford v. MCI Commc'ns. Corp. Health and Welfare Plan*, 399 F.3d 1076, 1083 (9th Cir.2005) (holding that because plaintiff had asserted claims under discrete ERISA provisions, including § 502(a)(1)(B), the "catchall" provision of § 502(a)(3) was not available); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir.1997) (holding that employee beneficiaries could not bring claim under § 502(a)(3) where they had a claim under § 502(a)(1)(B)).

Undaunted by this controlling precedent, plaintiffs maintain that they may still sue under § 502(a)(3) because relief under § 502(a)(1)(B) may not be "adequate." They argue that the Plan documents are ambiguous and contain misinformation. As a result, if it turns out that Toohey's death is not covered by the Plan, they will not be able to recover under § 502(a)(1)(B) and will then need some other remedy to hold defendants responsible for the ambiguity in the Plan documents which misled Toohey.

■ As this court has previously indicated, in an action to recover benefits under § 502(a)(1)(B), this court is empowered to interpret plan documents and resolve any conflict that may exist between them.[2] *See Bergt v. Ret. Plan for*

---

**2.** This court has also previously indicated that

in certain narrow circumstances, plaintiffs

*Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1144–45 (9th Cir.2002). Furthermore, any such conflict must be resolved in plaintiffs' favor. *Id.* However, the simple fact that a plan document was ambiguous or inartfully drafted does not render the remedy provided by § 502(a)(1)(B) inadequate. To hold otherwise would eliminate any distinction between a claim under § 502(a)(1)(B) and § 502(a)(3) because nearly every claim for benefits that comes before this court involves an argument that some language in the plan is ambiguous. This court is not persuaded that every time it decides this issue against a plaintiff, it must then afford that plaintiff an opportunity to sue the responsible fiduciaries for their actions in drafting the ambiguous documents. Rather, the proper remedy for holding plan fiduciaries accountable for ambiguous or misleading plan language is for the court, when appropriate, to construe that language against the party who drafted the policy. *See Bergt*, 293 F.3d at 1144–45 (resolving conflict between plan documents in favor of document most favorable to employee); *McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129, 1134 (9th Cir.1996) ("ERISA insurance policies are governed by the rule that ambiguous language is construed against the insurer and in favor of the insured."). In the event the language is not ambiguous, a plaintiff cannot reasonably contend that she was misled into believing her actions would be covered. *See Greany*, 973 F.2d at 822 ("A plaintiff cannot avail himself of a federal ERISA estoppel claim based upon statements of a plan employee which would enlarge his rights against the plan beyond what he could recover under the unambiguous language of the plan itself."). This court concludes that the relief available to plaintiffs under § 502(a)(1)(B) is adequate to address their concerns about the ambiguities and misleading information allegedly contained in the Plan documents.

■ Secondly, as discussed above, it is clear that plaintiffs seek monetary damages, not "equitable relief" as that term has been defined by courts in the context of § 502(a)(3). *See FMC Med. Plan v. Owens*, 122 F.3d 1258, 1261 (9th Cir.1997) (§ 502(a)(3) only allows "the traditional forms of equitable relief—injunction, mandamus, and restitution"), citing *Mertens*, 508 U.S. at 256, 113 S.Ct. 2063. Although the SAC characterizes the relief plaintiffs seek at various places as "an injunction," "equitable relief" or "restitution," their central injury is a denial of benefits, a monetary remedy. *See Knudson*, 534 U.S. at 210, 122 S.Ct. 708 (" '[a]lmost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.' "), quoting *Bowen v. Mass.*, 487 U.S. 879, 918–19, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (Scalia, J., *dissenting* ). The prayer for relief makes

---

may avail themselves of a claim for equitable estoppel. *See* Findings and Recommendations (docket # 37), pp. 16–17; *Spink v. Lockheed Corp.*, 125 F.3d 1257, 1262 (9th Cir. 1997); *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821–22 (9th Cir.1992). Plaintiffs' Second Claim appears to assert such a claim. Although equitable estoppel is loosely termed an equitable remedy, the Ninth

Circuit has held that equitable estoppel is not a remedy available under § 502(a)(3). *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1527–28 (9th Cir.1993). At least one circuit has concluded that it is available under § 502(a)(1)(B). *See Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1090 (11th Cir.1999).

clear that plaintiffs seek to recover money damages for benefits due under the Plan. No matter how they attempt to characterize it,[3] the substance of what they seek is the payment of benefits due under the Plan and "[w]hen the substance of the relief is monetary . . . such a remedy is not available under section 1132(a)(3)." *Owens,* 122 F.3d at 1262; *see also Knudson,* 534 U.S. at 221, 122 S.Ct. 708 ("Because petitioners are seeking legal relief—the imposition of personal liability on respondents for a contractual obligation to pay money— § 502(a)(3) does not authorize this action.").

Claims similar to those alleged by plaintiffs were addressed in *Korotynska v. Metro. Life Ins. Co.,* 474 F.3d 101, 103 (4th Cir.2006), where a plaintiff sued for termination of her long-term disability benefits. She brought her action under § 502(a)(3), claiming that she was not seeking individualized review of her adverse benefits determination under § 502(a)(1)(B), but was seeking to reform "the systemic improper and illegal claims handling practices" used by the insurance company to deny her and other beneficiaries a full and fair review of their claims. *Id.* at 104. The court concluded that the analysis required under *Varity* was "whether the claimant's injury is addressed by ERISA's other provisions and whether those provisions afford adequate relief. If so, equitable relief under [§ 502(a)(3) ] will normally not be 'appropriate.' " *Id.* at 105, citing *Varity,* 516 U.S. at 515, 116 S.Ct. 1065.

The court found "no question" that the plaintiff was pursuing her own individual benefits claim. *Id.* The case originated as a claim for benefits; in her amended complaint, the only injury which she complained of was the termination of her benefits; and she insisted that she had not renounced her claim for benefits, but admitted that her purpose in seeking § 502(a)(3) relief was to enable her to recover her benefits down the road. The plaintiff also admitted that relief was available under this § 502(a)(1)(B), but argued that it would not afford her "adequate" relief by not forcing the insurance company to answer for its illegal practices. The court rejected this argument, choosing to follow "the great majority of circuit courts" in holding that the plaintiff could not pursue a claim under § 502(a)(3) where she had a § 502(a)(1)(B) claim available. *Id.* at 106–07, citing cases, including *Forsyth,* 114 F.3d at 1474–75. The court also found that a review of the insurance company's claim handling practices would occur under a § 502(a)(1)(B) benefits determination because courts were required to consider the insurance company's decision making process, conflict of interests, and other factors in weighing that determination. *Id.* at 107 (citation omitted). Moreover, the court concluded that permitting the plaintiff's § 502(a)(3) suit would frustrate the aims of Congress in drafting ERISA's " 'carefully crafted and detailed enforcement scheme' " and would "encourage parties to avoid the implications of section § 502(a)(1)(B) [including its deferential standard of review] by artful pleading." *Id.* at 107–08 (internal quotation marks and citations omitted).

---

**3.** Plaintiffs' attempts to "dance around" the form of relief they truly seek results in such tortured language as that found in paragraph 38 of the SAC where plaintiffs:

also pray for and request *affirmative injunctive* relief to redress said violations and enforcement by Order for the Claims Administrator to make such *payments of the benefits* and provisions under the policies as herein alleged and demanded to plaintiffs. Plaintiffs request said *injunction* provide other appropriate *equitable relief* to redress said violations including *restitution* of the benefits herein claimed by plaintiffs. (emphasis added).

Similarly here, the true nature of the relief plaintiffs seek is contractually-based money damages. The First Claim under § 502(a)(1)(B) is adequate to pursue this relief and will afford plaintiffs the opportunity to address the deficiencies in the Plan documents. Therefore, plaintiffs cannot seek relief under § 502(a)(3).

### D. *Conclusion*

The nature of plaintiffs' claim is for an individualized review of an adverse benefits determination, and the nature of the relief sought is monetary. Therefore, this action may only be brought pursuant to § 502(a)(1)(B).

### *RECOMMENDATIONS*

For the reasons discussed above, defendants' motions to dismiss (dockets # 45 & # 50) should be GRANTED and Claims Three through Five should be DISMISSED with prejudice. Additionally, defendants' motions to strike the jury demand (dockets # 47 & # 52) should be GRANTED.

### *SCHEDULING ORDER*

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due November 30, 2009. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.